IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 29, 2009

## STATE OF TENNESSEE v. JONATHAN SCOTT LEMAY

**Appeal from the Criminal Court for Sullivan County**
**No. S53874    Robert H. Montgomery, Judge**

<hr>

**No. E2008-01761-CCA-R3-CD - Filed November 2, 2009**

<hr>

The defendant, Jonathan Scott Lemay, entered best interest pleas to robbery and aggravated assault, Class C felonies, in Sullivan County Criminal Court. The trial court imposed two concurrent five-year sentences to be served in the custody of the Department of Correction. In this appeal as of right, the defendant contends that the trial court erred in denying him alternative sentencing and by imposing sentences beyond the statutory minimum. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P.  3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

C. Brad Sproles, Kingsport, Tennessee, attorney for appellant, Jonathan Scott Lemay.

Robert E. Cooper, Jr., Attorney General & Reporter; Deshea Dulany Faughn, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Kent Chitwood, Assistant Attorney General, attorneys for appellee, State of Tennessee.

### OPINION

The record reflects that the defendant was indicted for the June 7, 2007 aggravated robbery of Brandon Jodon during which he obtained the victim's cell phone at knifepoint. The indictment also alleges that the defendant committed an aggravated assault on Tra Jones by the use of a knife. The judgments reflect that the defendant entered best interest pleas without any recommendation as to sentences to the lesser offense of robbery in count one and aggravated assault in count two. The presentence report, reflect that the victims, boys ages fifteen and fourteen, were walking down the street at approximately 1:35 in the morning when the defendant and codefendant drove up to the boys, exited their car, and told the victims that "It's time to do a pocket check." The codefendant approached the fifteen-year-old boy, Mr. Jodon, and demanded money from him; Mr. Jodon gave him his cell phone. The defendant put a knife to the throat of the fourteen-year-old boy, Mr. Jones. Based upon a description of the men and the car, the authorities later found the defendant and

codefendant parked at a McDonald's restaurant. The cell phone was found in the vehicle, and the knife was found in the defendant's front pocket.

The twenty-one-year-old defendant testified at the sentencing hearing that he would be able to live with his mother, step-father, and siblings if sentenced to an alternative sentence or diversion. Regarding the offenses, the defendant explained that it was wrong for him to get out of the car with the knife, but he really believed the entire incident was an argument between his codefendant and one of the victims. Later, he admitted that he and his codefendant did not know either victim. The defendant also denied approaching the boys with a knife, but he did acknowledge that, at 6 foot 6 inches tall, he was about twelve inches taller than the victims. He stated "we had no business being there [and] we [were] in the wrong for what we [did]." The defendant testified that he "wanted to just get on with my life and find a good job and go to college to further my education."

The defendant acknowledged his lengthy juvenile history but explained that he had "anger issues" stemming from his "very abusive father." His juvenile record began at the age of nine when he assaulted his step-father with a butcher knife. His behavior escalated until he was ultimately placed in a juvenile detention facility as a teenager. The defendant admitted that he pled guilty to an aggravated assault which reportedly involved forcing another juvenile at the detention facility to perform oral sex, but the defendant attributed this adjudication to "hazing" and "bad legal advice." The defendant testified that he attended anger management classes as a juvenile. After his release from detention, the defendant admitted that he re-offended while on probation, but he explained that he was protecting himself. Throughout his testimony, the defendant attempted to mitigate his responsibility for the offenses for which he had been adjudicated delinquent by claiming that he was "in the wrong place at the wrong time" and "around the wrong people." The defendant admitted at the sentencing hearing that he smoked marijuana regularly, explaining that marijuana worked better than the prescribed medicine for his Attention-Deficit Hyperactivity Disorder.

At the conclusion of the defendant's testimony, the State asked the court to deny the defendant's request for judicial diversion. The State acknowledged that the defendant was technically eligible for diversion but asserted that his juvenile history of assaultive behavior should preclude the trial court's finding of suitability. The State noted that the defendant had failed at rehabilitative measures, particularly noting that "apparently the anger management classes did not help" the defendant. The defendant asked the trial court to grant his request for judicial diversion or some form of alternative sentencing.

The record reveals that the trial court gave appropriate consideration to the factors analyzed in determining the defendant's suitability for judicial diversion. Ultimately, the trial court denied judicial diversion and cited several considerations as a basis for the denial: the defendant's failed attempts at rehabilitation, persistent assaultive behavior, criminal history of smoking marijuana while on bond for these offenses, mental health problems as evidenced by substance abuse and impulse control issues, and that granting diversion would not serve the interest of the public in consideration of the escalation of the defendant's assaultive behavior.

In arriving at the length of the defendant's sentence, the trial court gave a "great deal of weight" to the defendant's history of criminal behavior as evidenced by his juvenile history, his

admitted illegal drug use, and his underage use of alcohol. Tenn. Code Ann. § 40-35-114(1). The trial court also found that the defendant was a leader in the commission of the offenses, that the offenses involved more than one victim, that the victims were vulnerable due to their youth, that the defendant failed to comply with conditions involving release, and that the defendant had a history of juvenile adjudications that would qualify as felonies if committed by an adult. Tenn. Code Ann. § 40-35-114(2), (3), (4), (8), and (16). The trial court found none of the statutory mitigating factors applicable. As to the defendant's proposed non-statutory mitigating factors, the trial court found none of them applicable, rejecting the defendant's claims that he had no criminal history, had expressed remorse, had an excellent work history, and had made efforts at self-rehabilitation. Specifically, the trial court noted that the defendant "perhaps underst[ood] that there are consequences for the decisions [he] made . . . [but] [r]emorse is understanding the impact that a crime that [he] committed has on other people." Based upon these findings, the trial court imposed five-year sentences for each conviction, to be served concurrently.

As to alternative sentencing, the trial court found that community corrections was not appropriate for the defendant because he was convicted of violent offenses involving a deadly weapon. The trial court noted the defendant's history of assaultive behavior:

> An aggravated assault in 2001, assault in 2002, aggravated sexual battery but [the defendant] said it's aggravated assault in 2003, another domestic assault in 2006. And then just a year — and he's discharged from juvenile probation on May 30, 2006 simply because he turned 18 years of age and then less than just a little over a year later he commits this offense. In my opinion he has what I consider to be a long history of criminal conduct and frankly, I think confinement is necessary to protect society by restraining him because of that long history.

The trial court also noted that measures less restrictive than confinement had been unsuccessfully applied to the defendant in the past. Based upon these findings, the trial court denied all other forms of alternative sentencing.

On appeal the defendant contends that the trial court erred in imposing a sentence beyond the statutory minimum and by denying alternative sentencing. The defendant no longer takes issue with the trial court's denial of judicial diversion. The State contends that the trial court imposed a proper sentence in length and manner of service.

ANALYSIS

*Length of Sentence*

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due

consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994) (citation omitted); see Tenn. Code Ann. § 40-35-210(e).

Tennessee's sentencing act provides:

(c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c)(1)-(2).

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Id. § (d)-(f); State v. Carter, 254 S.W.3d 335, 342-43 (Tenn. 2008). "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in . . . the Sentencing Act." Carter, 254 S.W.3d at 346. Accordingly,

on appeal we may only review whether the enhancement and mitigating factors were supported by the record and their application was not otherwise barred by statute.  See id.

In imposing a sentence, the trial court may only consider enhancement factors that are "appropriate for the offense" and "not already . . . essential element[s] of the offense." Tenn. Code Ann. § 40-35-114.  These limitations exclude enhancement factors "based on facts which are used to prove the offense" or "[f]acts which establish the elements of the offense charged." Jones, 883 S.W.2d at 601.  Our supreme court has stated that "[t]he purpose of the limitations is to avoid enhancing the length of sentences based on factors the legislature took into consideration when establishing the range of punishment for the offense." State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997); Jones, 883 S.W.2d at 601.

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) the defendant's potential for rehabilitation or treatment, and (8) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee.  Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

We initially note, as the State correctly points out, that the defendant's challenge to the trial court's increase of sentence beyond the statutory minimum is misplaced.  Because the offenses were committed exactly two years after the 2005 amendment to the Sentencing Act, the defendant's allegation that the trial court's imposition of sentence violates Blakely v. Washington, 542 U.S. 296 (2004), is without merit.  Furthermore, the record reflects that trial court followed the applicable sentencing principles and appropriately found the existence of applicable enhancement factors.  The record shows that the trial court gave proper consideration, but no weight, to any proposed mitigating factors.  Under the revised sentencing act, this court may not review the weight afforded the enhancing and mitigating factors provided the trial court followed the principles of sentencing. Given that the enhancement factors were supported by the record and the trial court considered the mitigating factors as required, we conclude that the trial court followed the appropriate sentencing principles in this case.  We therefore affirm the defendant's five-year sentences for robbery and aggravated assault.

*Denial of Alternative Sentencing*

In determining whether the petitioner should have received an alternative sentence, the trial court was obliged to consider (1) the evidence, if any, received at the guilty plea and sentencing hearings, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar

offenses in Tennessee, (7) any statements the defendant made in his behalf about sentencing, and (8) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210 (b); -103(5)(2006); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

The defendant is a "standard offender convicted of a Class C, D, or E felony, [who] should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-30-102(6)(2006). Furthermore, a defendant is eligible for probation "if the sentence actually imposed upon the defendant is ten (10) years or less," and the trial court is required to automatically consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(a), (b)(2006). A defendant's potential for rehabilitation or lack thereof should be examined when determining if an alternative sentence is appropriate. Tenn. Code Ann. § 40-35-103(5). A defendant seeking full probation bears the burden of showing that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956)), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

The record reflects that the trial court gave consideration to the factors applicable to determination of alternative sentencing. In denying alternative sentencing, the trial court stressed the escalating pattern of the defendant's assaultive behavior and his past failed attempts at rehabilitation. The defendant admitted to continued criminal behavior while on bond for the present offenses through his continued use of marijuana and stated that if asked to pass a drug screen on the day of sentencing, he would fail it. Under these circumstances, we conclude that the trial court correctly denied alternative sentencing in this case.

CONCLUSION

In consideration of the foregoing, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE